**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CAMERON W. GALE,

*Plaintiff,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC. and OWNERSCHOICE FUNDING, INCORPORATED f/k/a CUC MORTGAGE CORPORATION,

*Defendants.*

Civil Action No.: 5:26-cv-1614 (AJB/MJK)

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Cameron W. Gale ("Plaintiff" or "Mr. Gale"), by his attorneys, Schlanger Law Group, LLP, as and for his Complaint against Defendants Experian Information Solutions, Inc. and OwnersChoice Funding, Incorporated f/k/a CUC Mortgage Corporation, alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, injunctive relief, and statutory attorneys' fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the New York Fair Credit Reporting Act, N.Y. General Business Law § 380 et seq. ("NY FCRA").

2. Congress enshrined within the FCRA the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

3. Congress stated plainly the purpose of the FCRA, namely "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair

and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . .” 15 U.S.C. § 1681(b).

4. The Defendants consist of Experian Information Solutions, Inc. (“Experian”), a national consumer reporting agency, and OwnersChoice Funding, Incorporated f/k/a CUC Mortgage Corporation (“OwnersChoice”), the servicer of Plaintiff’s mortgage loan and a “furnisher of information” to those agencies.

5. Plaintiff has exactly one mortgage loan — loan number xx598, serviced by OwnersChoice, with a principal balance of approximately $300,700 as of April 20, 2026. Yet Experian has reported two open OwnersChoice mortgage tradelines on Plaintiff’s credit reports — under account numbers beginning xx5980 and xx5981 — effectively doubling Plaintiff’s reported mortgage debt.

6. When Plaintiff disputed the duplicate reporting with Experian in April 2026, Experian’s “reinvestigation” did not correct the error. Instead, Experian “updated” the balance of one of the duplicate tradelines from $311,211 to $30,152,517 — approximately one hundred times the actual balance of Plaintiff’s mortgage.

7. A $30,152,517 mortgage balance likewise appeared on Plaintiff’s Equifax credit report.

8. OwnersChoice, for its part, has acknowledged in writing that “there have been issues with Experian involving duplicate reporting” and that it has “identified similar issues occurring with some sporadic loans,” while simultaneously telling Plaintiff that it was reporting his account “as we should” and that he would have to fix the problem himself.

9. As a direct and proximate result of Defendants’ negligent and willful acts and omissions, Plaintiff has suffered cognizable actual damages, both economic and non-economic, including denial of credit, depressed credit scores, damage to his reputation and

creditworthiness, harm to his business, lost time and effort, emotional distress, aggravation, and frustration.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331, and jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant OwnersChoice resides in this District and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including OwnersChoice's servicing of the mortgage loan and furnishing of information from Albany, New York, and because the property securing the loan is located in Cazenovia, New York, within this District.

**PARTIES**

12. Plaintiff is an individual and a "consumer" within the meaning of the FCRA, 15 U.S.C. § 1681a(c), and the NY FCRA, N.Y. GBL § 380-a(b).

13. Plaintiff is a co-borrower on a mortgage loan secured by residential property located at 2055 Glenwood Drive, Cazenovia, New York. Plaintiff presently resides in Marquette, Michigan.

14. Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, and is duly authorized and qualified to do business in the State of New York.

15. Experian is a "consumer reporting agency" within the meaning of the FCRA, 15 U.S.C. § 1681a(f), and the NY FCRA, N.Y. GBL § 380-a(e).

16. Defendant OwnersChoice Funding, Incorporated f/k/a CUC Mortgage Corporation is a New York corporation with its principal place of business at 4 Tower Place, Executive Park, 5th Floor, Albany, New York 12203. OwnersChoice is a credit union service organization that originates and services mortgage loans for credit unions.

17. OwnersChoice regularly furnishes information concerning consumers to consumer reporting agencies, including Defendant Experian, and is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2. OwnersChoice's furnished tradelines appear on Plaintiff's consumer reports under the names "OWNERSCHOICE FUNDING I" (Experian), "CUC MORTGAGE CO" (Equifax), and "OWNERS CHOIC" (Trans Union), all listing OwnersChoice's Albany, New York addresses and telephone numbers.

## FACTUAL ALLEGATIONS

### A. The Mortgage

18. In or about July 2015, Plaintiff and his then-wife, Melissa D. Gale, obtained a residential mortgage loan in the original amount of $384,000, funded on July 10, 2015, and secured by the property at 2055 Glenwood Drive, Cazenovia, New York (the "Mortgage"). The Mortgage bears loan number xx598.

19. The Mortgage was made in connection with Countryside Federal Credit Union, is currently held by or through Northern Credit Union (f/k/a Countryside), and is serviced by OwnersChoice.

20. Every payment on the Mortgage has been made on time. The Mortgage has never been reported late by any party, and OwnersChoice's own loan activity records reflect an unbroken history of timely payments.

21. As of April 20, 2026, the principal balance of the Mortgage was $300,699.87.

**B. The Duplicate OwnersChoice Tradelines — Reported Since At Least 2023**

22. Although Plaintiff has only ever had the single Mortgage with OwnersChoice, consumer reporting agencies have, since at least 2023, reported two open OwnersChoice/CUC mortgage tradelines in connection with the Mortgage — one under account number xx5980 and one under account number xx5981 — effectively doubling the mortgage debt attributed to the borrowers.

23. In 2023, Plaintiff's then-wife Melissa Gale discovered the duplicate reporting on her own credit reports. Her Equifax report at that time showed two OwnersChoice loans with a combined reported balance of $651,510 ($326,496 and $325,014) — approximately double the actual debt.

24. By dispute submitted to national consumer reporting agency Trans Union on or about October 18, 2023 (dispute no. 414776804), Melissa Gale disputed the duplicate OwnersChoice tradeline. On or about November 15, 2023, Trans Union resolved the dispute by deleting the duplicate tradeline from her credit report, with the result recorded as "Approved."

25. Notwithstanding Melissa Gale's successful 2023 dispute, the duplicate tradelines continued to be reported on Plaintiff's credit reports, including his Experian credit report.

**C. The April 2026 Escalation: Phantom Loans and a $30 Million Mortgage**

26. As of April 7, 2026, Experian reported both OwnersChoice tradelines as open — no. xx5980 with a balance of $311,211 and no. xx5981 with a balance of $301,525.

27. On or about April 10, 2026, Plaintiff observed on his credit monitoring that his reported OwnersChoice debt had increased by approximately $28,000–$29,000, appearing as a separate line item, and that two $300,000+ OwnersChoice mortgages remained on his reports. He called OwnersChoice's mortgage servicing department the same day.

28. During that April 10, 2026 call, OwnersChoice's servicing representative confirmed that: (a) Plaintiff's current principal balance was $301,525.17; (b) OwnersChoice had only the one mortgage, transferred over from Countryside; (c) there was no new loan for $28,000–$30,000; and (d) OwnersChoice's last report to the credit bureaus, on March 9, was that Plaintiff was current. The representative nevertheless told Plaintiff that "the only way that we could adjust this is you would have to dispute it on your end," "because I'm showing that we're reporting you as we should."

29. By April 11, 2026, Plaintiff's Experian report had materially worsened, reporting tradeline no. xx5980 with a balance of $30,152,517.

30. As of the date of the filing of this action, Plaintiff's Experian credit report continued to reflect these errors.

**D. Experian's Conduct**

31. At the time Plaintiff disputed with Experian, Plaintiff's Experian credit report contained the following inaccurate information: two open OwnersChoice mortgage tradelines (nos. xx5980 and xx5981) for a single mortgage loan, attributing to Plaintiff more than $600,000 in mortgage debt on a loan with an actual balance of approximately $301,525.

32. On or about April 9–11, 2026, Plaintiff disputed the OwnersChoice reporting through Experian's online dispute portal. By April 11, 2026, Experian's portal showed the OwnersChoice tradeline — then bearing a balance of $30,152,517 — as "Under dispute."

33. Also on April 11, 2026, Plaintiff submitted a contemporaneous written complaint through Experian's customer questionnaire: "Don't increase the balance of my mortgage by 30 million dollars please when I file a dispute about Experian erroneously listing a duplicate mortgage on my report--having done so, it looks as though my credit score went down because of it. This is most certainly not fair."

34. By dispute results dated April 14, 2026, Experian reported the outcome of its reinvestigation of the OwnersChoice tradeline as "Updated." The accompanying before-and-after detail showed that Experian changed the tradeline's reported balance from $311,211 to "$30,152,517," with the notation: "This item was updated from our processing of your dispute in Apr 2026."

35. In other words, Experian's response to a dispute that a $300,000 mortgage was being double-reported was to increase the reported balance of the disputed tradeline to more than $30 million — approximately one hundred times the actual balance of the Mortgage.

36. The April 14, 2026 dispute results also reflected a second OwnersChoice dispute still pending, with a projected completion date of May 9, 2026.

37. As of May 4, 2026, Experian was still reporting the OwnersChoice tradeline no. xx5980 as "Open/Never late" with a balance of $30,152,517, alongside the second open OwnersChoice tradeline no. xx5981.

38. By dispute results dated May 8, 2026, Experian reported that the disputed OwnersChoice item was "Deleted — This item was removed from your credit report."

39. The very same May 8, 2026 results, however, showed that Experian continued to report two open OwnersChoice mortgage tradelines: one with a recent balance of "$300,700 as of 05/07/2026" (date opened 07/10/2015) and a second with a recent balance of "$301,525 as of 03/10/2026" (date opened 12/09/2010).

40. Upon information and belief, Experian continues to report duplicate OwnersChoice mortgage tradelines on Plaintiff's credit report through the present.

**E. OwnersChoice's Conduct**

41. On April 17, 2026, Plaintiff submitted a written request through OwnersChoice's eStatus Connect portal urgently requesting a statement showing "my name, mortgage number, original date and amount, and current balance, for each mortgage and/or loan Owner's Choice is reporting to the three credit agencies."

42. By email dated April 19, 2026, Kimberley Rumph, an OwnersChoice Senior Mortgage Servicing Specialist, provided Plaintiff a Verification of Mortgage confirming the single loan no. xx598 and wrote: "If you are having a problem with a credit bureau reflecting an additional mortgage with a different amount, you should submit a dispute to all 3 credit bureaus."

43. By reply email dated April 19, 2026, Plaintiff informed OwnersChoice in writing that: OwnersChoice was reporting a duplicate $300,000+ mortgage to Experian and Equifax; CUC Mortgage was reporting a duplicate to Trans Union; OwnersChoice was reporting a mortgage of more than thirty million dollars to Experian and Equifax; and Plaintiff's disputes had resulted in the erroneous information being "verified" rather than corrected.

44. By email dated April 27, 2026, Janet Seeley, an OwnersChoice Client Relationship Manager, acknowledged: "I've been informed that there have been issues with Experian

involving duplicate reporting, which the team is currently working to resolve directly with the credit agencies."

45. By reply email that day, Plaintiff summarized the situation for OwnersChoice in writing: all three credit reporting agencies were reporting anomalies; a double $300,000 mortgage had been reported since at least 2023; a 28k, 29k, and 30k loan and a $30+ million mortgage had recently appeared; Plaintiff had called OwnersChoice numerous times and been told there was nothing OwnersChoice could do; his disputes had been closed with the debt "affirmed" by OwnersChoice; the erroneous reportings referenced loan numbers xx598, xx5980, and xx5981; his credit score was suffering; his startup business loans carried very high interest rates; and he had been denied credit.

46. By further email dated April 27, 2026, Seeley responded: "At this time, it does not appear to be a matter of OwnersChoice Funding making an error, but rather the credit reporting agencies inaccurately reporting the data. We have identified similar issues occurring with some sporadic loans and are actively reaching out to the agencies to obtain a resolution."

47. Upon information and belief, in connection with Plaintiff's April and May 2026 Experian disputes, Experian notified OwnersChoice of the disputes and provided OwnersChoice all relevant information regarding them, and OwnersChoice responded to those dispute verification requests without correcting its furnishing — verifying, rather than correcting or deleting, the duplicate tradeline.

48. Despite its actual knowledge of the duplicate reporting problem since at least 2023, its admission that it has identified "similar issues occurring with some sporadic loans," and Plaintiff's repeated oral and written notices, OwnersChoice failed to correct the

information it furnishes to consumer reporting agencies, including Experian, and the duplicate tradelines remain on Plaintiff's credit reports.

**F. Damages**

49. As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer actual damages including denial of credit; an artificially constrained credit limit; harm to his business; damage to his credit rating, creditworthiness, and reputation in his small community; loss of the benefit of his otherwise excellent payment history; significant lost time and effort spent on disputes, telephone calls, and correspondence across multiple bureaus and the furnisher; and emotional distress, including frustration, anxiety, stress, aggravation, and the distress of watching his reported debt balloon by tens of millions of dollars in response to his disputes. These stressors have taken their toll on him for approximately a year, resulting in uncharacteristic sleeplessness, weight and hair loss.

50. For example, in or about April 2026, Plaintiff held a Visa credit card issued by Elan Financial Services through Range Bank with a credit limit of only $500, notwithstanding that Plaintiff had a large balance in his checking account, as well as significant certificates of deposit, at Range Bank.

51. Range Bank applied for a credit limit increase on Plaintiff's behalf. By letter dated April 21, 2026, Elan Financial Services denied the request, stating as the primary reason: "Maximum amount of unsecured credit already issued." This denial was caused by the inaccurate credit reporting set forth herein.

52. By email dated April 21, 2026, Range Bank branch manager Danielle Narhi confirmed to Plaintiff that she had called the credit card company and been informed "that the decision was based off the information within your credit report."

53. Plaintiff's credit reports and file have been obtained from credit reporting agencies, including Experian, and reviewed by prospective and existing credit grantors, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities and the most favorable terms and interest rates for credit that was extended.

## FIRST CAUSE OF ACTION

**VIOLATION OF FCRA § 1681e(b) AND § 1681i**

**Against Defendant Experian (Consumer Reporting Agency)**

54. Plaintiff realleges and incorporates the above paragraphs as if fully restated herein.

55. Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of the credit reports and credit files it published and maintained, including by reporting two open mortgage tradelines for a single loan, and by reporting a balance of $30,152,517 on a mortgage with an actual balance of approximately $300,700.

56. Experian violated 15 U.S.C. § 1681i by acts and omissions including but not limited to:

   a. failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate, and to record the current status of the disputed information or delete the item from Plaintiff's credit file, in violation of § 1681i(a)(1) — including a "reinvestigation" that increased the disputed balance from $311,211 to $30,152,517;

   b. failing to review and consider all relevant information submitted by Plaintiff, in violation of § 1681i(a)(4); and

c. failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the items upon a lawful reinvestigation, in violation of § 1681i(a)(5).

57. As a result of Experian's violations of §§ 1681e(b) and 1681i, Plaintiff suffered actual damages including but not limited to: denial of credit, depressed credit scores, harm to his business, damage to reputation, lost time and effort, aggravation, and emotional distress cognizable under the FCRA.

58. These violations were willful, rendering Experian liable for actual damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

59. In the alternative, Experian was negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

## SECOND CAUSE OF ACTION

### VIOLATION OF FCRA § 1681s-2(b)

### Against Defendant OwnersChoice (Furnisher of Information)

60. Plaintiff realleges and incorporates the above paragraphs as if fully restated herein.

61. Experian received disputes from Plaintiff and, upon information and belief, communicated the dispute to OwnersChoice pursuant to 15 U.S.C. § 1681i(a)(2).

62. OwnersChoice violated 15 U.S.C. § 1681s-2(b)(1) by acts and omissions including but not limited to:

a. failing to conduct a reasonable investigation of Plaintiff's disputes after receiving notice of them from Experian, in violation of § 1681s-2(b)(1)(A);

b. failing to review all relevant information provided by Experian, in violation of § 1681s-2(b)(1)(B);

c. failing to report the results of its investigations accurately, and failing to report that the disputed information was incomplete or inaccurate, in violation of § 1681s-2(b)(1)(C) and (D); and

d. failing to promptly modify, delete, or permanently block the reporting of information it could not verify as accurate — a duplicate tradeline for a loan that does not exist — in violation of § 1681s-2(b)(1)(E).

63. OwnersChoice's conduct is particularly egregious because its own records confirmed at all relevant times that Plaintiff has only one mortgage; it acknowledged in writing that it had "identified similar issues occurring with some sporadic loans"; and it nevertheless told Plaintiff that it was reporting his account correctly and that he would have to resolve the problem himself.

64. As a result of OwnersChoice's violations of § 1681s-2(b), Plaintiff suffered actual damages including but not limited to: denial of credit, depressed credit scores, harm to his business, damage to reputation, lost time and effort, aggravation, and emotional distress cognizable under the FCRA.

65. These violations were willful, rendering OwnersChoice liable for actual damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n.

66. In the alternative, OwnersChoice was negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

**THIRD CAUSE OF ACTION**

**VIOLATION OF NY FCRA § 380-f AND § 380-j**

**Against Experian**

67. Plaintiff realleges and incorporates the above paragraphs as if fully restated herein.

68. Experian violated the NY FCRA, N.Y. GBL §§ 380 – 380-u, by acts and omissions including:

    a. failing to promptly reinvestigate Plaintiff's disputes to determine whether the disputed information was inaccurate and to record the current status of the disputed information, in violation of § 380-f(a); and

    b. failing, after the disputed information was in error or could no longer be verified, to promptly expunge the items, correct the file, and refrain from reporting the items in subsequent consumer reports, in violation of § 380-f(b).

69. Experian violated § 380-j(e) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the preparation of the credit reports and credit files that it published and maintained.

70. These violations of § 380-f and § 380-j(e) were willful, rendering Experian liable for actual damages, punitive damages, costs, and reasonable attorneys' fees pursuant to § 380-l, and entitling Plaintiff to injunctive relief restraining Experian from further violations of Plaintiff's rights under the NY FCRA.

71. In the alternative, Experian was negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorneys' fees pursuant to § 380-m, as well as injunctive relief restraining Experian from further violations of Plaintiff's rights under the NY FCRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cameron W. Gale seeks judgment in his favor and damages against Defendants as follows:

A. Awarding Plaintiff actual damages, including damages for emotional distress;

B. Awarding Plaintiff statutory damages;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff reasonable attorneys' fees and costs;

E. Ordering Experian to delete all inaccurate information from Plaintiff's credit reports and files, to cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information, and to send updated and corrected credit report information to all persons and entities to whom they have reported inaccurate information about Plaintiff within the last three years;

F. Granting such further declaratory and injunctive relief as may be appropriate, including enjoining Experian from further violations of Plaintiff's rights under the NY FCRA;

G. Awarding pre-judgment and post-judgment interest as allowed by law; and

H. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Dated: August 20, 2026

Respectfully submitted,

Daniel A. Schlanger (Bar roll # 519497)
Schlanger Law Group, LLP
150 Allens Creek Road, Suite 240
Rochester, NY 14618
T: (212) 500-6114
F: (646) 612-7996
E: dschlanger@consumerprotection.net

***s/ Donald R. Gordon***
Donald R. Gordon (Bar roll #707868)
*Of Counsel*
Schlanger Law Group, LLP
150 Allens Creek Road, Suite 240
Rochester, NY 14618
T: (212) 500-6114
F: (646) 612-7996
E: don@hudsonconsumer.com

*Attorneys for Plaintiff*